JOHN D. CONELY ET AL. v. ALVIN WOOD AND HENRY W. NEWLOVE.

*Partnership—Contract to pay for legal services in suit against one partner.*

An agreement between two partners, that the firm should pay the expenses of the defense of a suit against one copartner for slander, is binding upon the firm, and the question of whether it was made is for the jury.

Error to Wayne. (Gartner, J.) Submitted on briefs October 23, 1888. Decided January 11, 1889.

*Assumpsit.* Defendants bring error. Affirmed. The facts are stated in the opinion.

*James T. Keena,* for appellants, contended:

1. There was no consideration for the promise. It was Newlove's duty to the firm to attend to the outside and traveling business.

2. A person for whose benefit a promise is made cannot maintain an action for its enforcement if it is void as between the promisor and promisee because of want of or failure of consideration. Such an action is subject to the equities between the original parties; citing *Dunning v. Leavitt,* 85 N. Y. 30; *Lawrence v. Fox,* 20 Id. 268.

3. The promise, if made, was made to Newlove, and not to plaintiffs.

4. Newlove did not employ plaintiffs in behalf of the firm to defend him, and plaintiffs in such employment gave credit to Newlove, and not to the firm.

5. When the consideration on both sides is a promise, the contract is bilateral. Both parties must be bound at the same time, or neither is bound; citing *Tucker v. Woods,* 12 Johns. 190; *Turnpike Co. v. Coy,* 13 Ohio St. 84; *James v. Fulcrod,* 5 Tex. 512.

6. In a unilateral contract the offeree is not bound to perform at all; nor, until performance, is the offerer bound, but, upon performance by the offeree, the proposal of the offerer is con-

verted into a binding promise; citing *Train v. Gold*, 5 Pick. 380, 385; *Turnpike Co. v. Coy*, 13 Ohio St. 84; *Todd v. Weber*, 95 N. Y. 181; *Morse v. Bellows*, 7 N. H. 549.

7. The facts in this case do not bring it within that class of cases holding that, where a promise is made to one for the benefit of another, the beneficiary may bring an action for its breach; citing *Lawrence v. Fox*, 20 N. Y. 268.

8. The promise was not made for plaintiffs' benefit, and none of the cases go to the extent of holding that every promise made by one person to another, from the performance of which a third person might derive a benefit, gives him a right of action, he being privy neither to the contract nor consideration; citing *Garnsey v. Rogers*, 47 N. Y. 240; *Burton v. Larkin*, 36 Kan. 246; *Bank v. Lodge*, 98 U. S. 123; *Railroad Co. v. Curtiss*, 80 N. Y. 219; *Greenwood v. Sheldon*, 31 Minn. 254; *Anderson v. Fitzgerald*, 21 Fed. Rep. 294.

*W. L. Carpenter* and *John F. McKinley*, for plaintiffs, contended for the rule stated in the opinion, citing no authorities.

SHERWOOD, C. J. The defendants in this case, in 1884 and 1885, composed the firm of Alvin Wood & Co., and did business in the city of Louisville, Ky. The firm had been doing business with George W. Keogh, of Detroit, in 1884, and the latter part of that year Mr. Newlove came to Detroit to look after the firm's business, and while in the city, in a conversation with one Davis, it was claimed by Keogh, he used some slanderous language about his business, and for which Keogh caused to be issued a *capias* against Newlove, which was not then served by reason of his leaving for Louisville. On his return some time thereafter, however, it was served, and issue was joined in the cause thus commenced. Before Newlove returned he succeeded in securing a copy of the affidavit upon which the writ issued, and it appears that the cause of the arrest and the subject of the suit was talked over with Mr. Wood, his partner, after the former eturned to Louisville, and the propriety of Mr. Newlove

going again to Detroit to look after the firm's business there; and it was claimed by plaintiffs that, at the request of Wood, Newlove came to Detroit upon the understanding that if the suit commenced by *capias* should be prosecuted against Newlove the firm should be at the expense of the defense; that Newlove did return to look after the firm's business, and the suit was prosecuted. Newlove defended, and, at the end of a second trial, made good his defense. The plaintiffs in this suit acted for Newlove in making the defense, and bring this suit for their services rendered therein, and from the judgment rendered in their favor the defendants bring the case to this Court for review. All the proceedings had at the circuit are before us.

The defendants claim that neither the defendant Wood nor the firm are liable to the plaintiffs for the services rendered; that neither are liable for the slanders of Newlove.

The views of counsel for defendants are found fully expressed in his requests to the court to charge, which are as follows:

"1. That under the pleadings and proofs, the plaintiffs are not entitled to recover.

"2. That the evidence in this case in no way connects the defendant Wood with the slander charged by Keogh against Newlove, and he (Wood) would not be liable to Keogh in damages therefor, or to plaintiffs for their charges in defending Newlove, unless he (Wood) expressly authorized or directed the employment of plaintiffs for that purpose.

"3. That the employment of plaintiffs to defend Newlove in the slander suit of Keogh was not within the scope of his authority to bind the firm.

"4. That plaintiffs knew, or were bound to know, that their employment by Newlove to defend him in the slander suit was not a partnership transaction.

"5. That there is no evidence in the case showing, or tending to show, that Newlove employed plaintiffs for or

in behalf of defendants, or that plaintiffs gave credit to defendants in defending said slander suit."

We do not think the case one proper for the court to direct the verdict. The court's charge is substantially to the effect of the second request, and the same is true as to the third. There was evidence in the case tending to show that Wood did direct Newlove to go to Detroit to attend to the firm's business, with a knowledge of the dangers to Newlove of an expensive lawsuit by so doing, and that he (Wood) was not only willing to run the risk, but that it was understood the firm should bear the expense of the threatened and expected litigation.

Mr. Conely testified that upon the first trial the plaintiffs' fees were paid in two installments,—the first by check of defendant firm, and the second, being for $50, the plaintiffs made their draft upon the firm for that amount, which was duly paid. From this it would appear defendant firm recognized to that extent the relation of debtor and creditor. The partnership of the defendants was conceded by their counsel, and Mr. Conely further testified that when he had tried the cause Mr. Newlove told him to send his bill to the firm, and that the firm would pay it. Mr. Newlove was sworn for plaintiffs, and testified that after he had advised his firm of the situation at Detroit it became necessary for some one to go there to see to their firm business, and then says:

"I told Mr. Wood if I should come up here [Detroit] I would be arrested, and he remarked that it would not do to neglect our business; that I must come any way; that if I was arrested we would have to fight it."

He further testified that for several bills for expenses incurred in said suit, paid by him, Wood & Co. had reimbursed the witness. This testimony, with the other circumstances in the case, was submitted to the jury under the following charge upon this question, viz.:

"The only question for you to determine from the evidence is as to whether Mr. Wood authorized Mr. Newlove or directed Mr. Newlove to come here to Detroit, and at the same time stated, 'If any difficulty arises, we will have to go on'—that is, the firm will have to go on—'and fight the suit.' If that conversation took place, or substantially that, and you determine from the evidence that by language of that kind he authorized Mr. Newlove to come to the city of Detroit, and that the firm would undertake the defense of any suit begun there by Mr. Keogh, why then it would become a firm matter. Ordinarily, if one member of a firm has slandered a third party, it would be a tort for which the individual member alone would be liable, and the only question that I submit to you is as to whether Mr. Wood directed Mr. Newlove to come to the city of Detroit, and made that statement to him."

The jury found against the defendants. We see nothing erroneous in submitting the testimony upon this point to the jury, or in the judge's charge in relation thereto. It was substantially the only question in the case. There was no question about the services being performed, or of their character; neither was the reasonableness of the charges made contested.

The court charged the jury as requested in the third request, with a qualification entirely proper, which was, unless by agreement, or that which amounted to an agreement, by the firm to become so liable, or that it should be regarded as a partnership liability. There was no error in this. Where the partnership consists of but two persons, as in this case, an agreement between them to that effect is all that is necessary to create the firm's liability; and whether such an understanding did exist the court left to the jury.

The fifth request was not correct. It did not state the facts correctly, which it assumed, and was properly refused.

In this case it was not necessary to show that the firm promised to pay the plaintiffs the amount of their bill.

It was only necessary to show that the firm had assumed the payment of the debt, and that Mr. Newlove was authorized to make the defense. This the jury found by their general verdict, under the charge of the court, and their verdict is conclusive upon the questions.

The judgment must be affirmed.

The other Justices concurred.